[Civ. No. 14215. First Dist., Div. One. Aug. 1, 1950.]

JOSEPH P. GAVIN et al., Appellants, v. HARRY
BLUMENTHAL, Respondent.

Albert Picard for Appellants.

Morris Oppenheim for Respondent.

WOOD (Fred B.), J.—This is an appeal by the plaintiffs
from a judgment for the defendant in an action tried by the
court without a jury upon a complaint for $4,000 had and
received to and for the use and benefit of the plaintiffs.

Appellants' theory is that the money was paid under mistake
of fact or of law. They make no claim of any error of law
occurring at the trial. The only question is whether or not
the evidence supports the judgment.

It appears from the evidence that in February, 1948,
appellants held an apartment house under lease from respond-
ent at a rental of $700 per month with a term that had three
and one-half years yet to run. Desiring to sell, they engaged the
services of a real estate broker, a Mr. Taylor, who found pur-
chasers, referred to as the Littles, who agreed to pay $21,000
for the leasehold interest, the furniture and furnishings, and
the good will of the business, "subject to a satisfactory lease

for purchasers" and bill of sale by sellers. A new lease was negotiated between the Littles and respondent at a rental of $800 a month for a term of five years with an option in their favor for a five-year renewal, coupled with a power in the lessor to cancel the lease upon payment to the Littles of the sum of $21,000, the amount of their investment. Respondent executed and delivered to appellants a release of their obligations under the old lease, and they returned that lease to him with their relinquishment of their rights in and to it endorsed upon it.

For his part in the transaction, respondent demanded and received the sum of $5,000, of which $1,000 was paid by Mr. Taylor or the firm with which he was associated, out of the realtor's commission, and $4,000 by Mr. Taylor upon the direction of appellants, out of the proceeds of the sale of their interest to the Littles. In respect thereto, respondent executed and delivered two receipts. One, dated February 19, 1948, recited the receipt of $1,000 from Love Investment Company, the firm with which Mr. Taylor was associated, "as consideration for entering into a lease" of the premises with James and Bessie Little. The other, dated February 27, 1948, recited the receipt of $4,000 and that in consideration therefor respondent released appellants from all obligations under their lease with him, and from any and all claims respondent had or might have against them.

Appellants claim that the transaction concerning the new lease with the Littles was consummated February 19, the date which the $1,000 receipt bears; that the old lease was thereupon cancelled by operation of law and all obligations of appellants under it terminated; hence, that when on February 27, they paid the $4,000 and received their release, respondent gave nothing and they received nothing; that on the 27th they were unaware of the new lease, desired respondent's consent to a transfer of the old lease, did not ask for a release of their obligations under the old lease, and thus paid the money under mistake.

There is evidence which amply supports the view that this claim of appellants is without foundation.

Respondent testified that he did not agree to transfer the old lease; that at the same time that he released appellants from the old he executed the new lease; that he dealt through his attorney, Mr. Oppenheim, instructing the latter to release appellants from their lease, give a new 10-year lease to the Littles, and receive $5,000 for it; that the new lease was for

a term of 10 years at a different rental with a provision that if he wanted to cancel it within that period he would have to pay $21,000; and that he received $5,000.

Mr. Oppenheim testified that he had a telephone conversation with appellant Joseph Gavin in which the latter said he had O.K.'d a prospective buyer who was willing to pay $21,000 but was not satisfied to take the place for a mere three and a half years, and wanted a five-year lease with an option for five years more; that Gavin would like to see the new people get a new lease, and that he wanted to be released from the old lease; that, after consulting respondent, Oppenheim informed Gavin that respondent would release Gavin from his lease and would give a lease to these people upon the terms described, and that for that respondent wanted $5,000; that Gavin then said he did not like to pay that, but would talk to Mr. Taylor and Oppenheim would hear from Taylor; that later Mr. Taylor said he had taken the matter up with the appellants and was ready to close the deal; that Taylor came to the office and Oppenheim typed the release.

It appears without conflict that Taylor and Oppenheim then met the appellants at the latter's apartment, where the release was delivered to appellants and the latter delivered to Oppenheim the relinquishment of their rights under the old lease. Mr. Gavin testified that upon that occasion Mr. Taylor gave Mr. Oppenheim $4,000 at Gavin's direction and Gavin received in return the release of the old lease; that Gavin accepted that paper and made no objection to accepting it; that he knew the $4,000 was demanded for the release; it was not his understanding that it was for the purpose of getting respondent to permit the assignment of appellants' interest under the old lease; that he understood the release and that the $4,000 was paid pursuant to it. Mrs. Gavin testified that she was present at the time the release was signed, and that Mr. Taylor was authorized to pay $4,000; that Mr. Taylor came in with the money to pay Mr. Oppenheim the $1,000 and also the $4,000 he demanded; that Mr. Oppenheim said the Gavins would have to pay $4,000 more before he would return to appellants the release of lease.

Mr. Oppenheim testified that he was paid $5,000 all at one time; that that was all under the same agreement. Mr. Taylor testified that the release was delivered to Gavin in Gavin's apartment at the time that Gavin turned over his old lease to Oppenheim; that Oppenheim signed the release, as agent of

respondent, in Taylor's presence; that the Gavins signed the relinquishment of the old lease in the apartment the day they were there; that Taylor paid Oppenheim $5,000, waiving $1,000 of the commission and paying $4,000 on behalf of Gavin at Gavin's instructions, and received from Oppenheim a receipt for $1,000.

It is true that the appellants testified that they understood through a Mr. Bomgardner, a realty broker, that respondent would consent to a transfer of the old lease for $1,000; and that Mr. Gavin denied that he ever told Mr. Oppenheim he wanted a release. It is also true that respondent denied having made any such representation in relation to this transaction; the old lease was not transferred; and it would appear from appellants' own testimony that they knew what they were doing when they relinquished their rights, and accepted delivery of the release of their obligations, under the old lease, and instructed their agent to pay the $4,000.

No purpose would be served by further extending this summary. The evidence amply supports the judgment. Any conflicts were, of course, weighed and determined by the trial court who viewed the witnesses and heard the testimony.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.